[No. 15090. Department One. May 13, 1919.]

THE STATE OF WASHINGTON, *on the Relation of the City of Seattle, Appellant,* v. PUBLIC SERVICE COMMISSION *et al., Respondents.*[1]

GAS (3) — REGULATION OF CHARGES — PUBLIC SERVICE HEARING — NOTICE. Irregularity in the public service commission hearing on an application to fix gas rates, without the ten days' notice required by Rem. Code, § 8626-80 (which is for the benefit of the one against whom the complaint is filed) is not available to a city which was not required to litigate the issue presented by its complaint until after the fullest opportunity to present its case.

SAME (3). Where the public service commission is proceeding on its own motion, under Rem. Code, § 8626-82, to hear an application to fix gas rates, the city cannot, by filing a complaint within ten days of the hearing, deprive the commission of power to proceed with the hearing.

[1]Reported in 180 Pac. 913.

SAME    (3) — REGULATION OF CHARGES — REASONABLENESS — EVI-
DENCE—SUFFICIENCY.   A gas company seeking a reasonable increase
in rates, sustains the burden of proof imposed by Rem. Code, § 8626-82,
where it submitted all the testimony, which included uncontested
findings on previous hearings, records and detailed reports of experts
justifying the increase, and it was also sustained by the commis-
sion's general knowledge as a result of previous experience and in-
vestigation.

SAME (3)—REGULATION OF CHARGES—REASONABLENESS.   Rem. Code,
§ 8626-26, requiring rates to be just, fair, reasonable and sufficient,
authorizes an adjustment between different classes of consumers,
and an increase over those asked for, if necessary to make them
just and fair to each class and to enable the company to continue
to serve the public.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered August 31, 1918,
affirming, on certiorari, an order of the public service
commission, establishing rates for gas service.   Af-
firmed.

*Walter F. Meier* and *Thomas J. L. Kennedy*, for ap-
pellant.

*Clise & Poe*, for respondents.

TOLMAN, J.—The respondent Seattle Lighting Com-
pany is a public service corporation, engaged in the
manufacture, distribution and sale of gas in the city
of Seattle, under a franchise granted by the city.   On
September 18, 1917, the lighting company filed with the
state public service commission a schedule of rates,
known as tariff No. 2, which included a "ready to
serve" charge of twenty-five cents per month, and
substantially increased the rates for gas over the rates
which had theretofore been in effect.   The commission
set the matter for hearing on October 15, 1917, and so
advised the city officials by letter.   On October 9, 1917,
after the time for the hearing had been so fixed, the
city filed a complaint with the commission in which it

alleged that the rates contemplated by the proposed tariff No. 2, were unjust, unreasonable, discriminatory, and unlawful, and prayed that such proposed tariff be suspended for ninety days, that a hearing be had, and that the lighting company be required to sell gas at the theretofore existing rates. At the time previously fixed for the hearing, the city appeared by one of the officers of its legal department and objected to a hearing being then had, because less than ten days had elapsed since the filing of its complaint, and no notice had been issued thereon, as required by the statute, Rem. Code, § 8626-80. The commission thereupon continued the hearing as to the city until October 26 following, directed notice to be given, and proceeded with the hearing as to the lighting company, permitting the city's legal representative to remain and participate in the proceedings. Witnesses were sworn and testified, and thereafter the hearing was continued to October 26. On October 22 the commission, on its own motion, entered an order further continuing the hearing until January 2, 1918, and providing that tariff No. 2 should become effective October 31, 1917, pending such hearing, and until the further order of the commission. The hearing of January 2 was adjourned at the request of the city to January 9, 1918. The lighting company then put in the remainder of its evidence, the city's evidence was introduced, the case was argued, and the hearing closed. Thereafter the commission made its findings of fact and final order, putting into effect a schedule of rates differing somewhat from tariff No. 2, excluding the "ready to serve" charge, and making such changes that it is now contended that some of the rates are raised above those contained in tariff No. 2, while others are lowered by such changes. This is now referred to as tariff No. 3.

The city sued out a writ of review in the superior court for Thurston county, and from a judgment of that court sustaining the action of the commission, the case is brought here on appeal. Errors are assigned to the following effect: First, that the commission was without jurisdiction to proceed on October 15, 1917, because ten days had not elapsed from the filing of the city's complaint, that the evidence taken on that day was a nullity, and that it was afterwards improperly considered by the commission; second, that the commission arbitrarily refused to place the burden of proof as to the justness and reasonableness of the proposed increase of rates upon the lighting company; third, that the order of the commission was not based upon competent proof; fourth, that the commission was without jurisdiction to establish rates higher than those proposed in tariff No. 2; fifth, that having put tariff No. 2 into effect pending the hearing, the commission is without jurisdiction in establishing tariff No. 3, to permit the lighting company to bill back or collect from customers for any excess of tariff No. 3 over tariff No. 2.

As to the first point, the statute, Rem. Code, § 8626-80, is framed for the protection of the one against whom the complaint is filed, and no objection has at any time been raised by the lighting company. The city was not required to litigate the issue raised by its complaint until after the expiration of ten days, and in the meantime was permitted to attend and participate through its legal department. Then and afterwards it had the fullest opportunity to protect its rights and present its case. Should we concede that the hearing of October 15 was irregular, still the city was not prejudiced thereby. The commission was proceeding upon its own motion for the hearing upon the

proposed tariff No. 2, filed by the lighting company, as it had power to do under § 8626-82 and other subdivisions of that section, and we cannot hold that, by the filing of a complaint within ten days prior to that hearing, the city could deprive the commission of power to proceed with the hearing already ordered. A very different question would be presented had the commission proceeded to make its final order on October 15 while the city's complaint was still pending and undetermined. The most that the city was entitled to was what it received, namely, the protection of all of its rights and the opportunity to present its case after ten days' notice.

Appellant's second point is based upon that portion of Rem. Code, § 8626-82, which provides:

"At any hearing involving any change in any schedule, classification, rule, or regulation, the effect of which is to increase any rate, fare, charge, rental or toll theretofore charged, the burden of proof to show that the changed schedule, classification, rule, or regulation, or the increased or proposed increased rate, fare, charge, rental or toll, is just and reasonable shall be upon the public service company."

The lighting company introduced at the hearing all of the testimony, exhibits, and the opinion and findings of fact received and made by the commission at previous hearings which had never been reviewed and which stood unchallenged and uncontested, and showed an investment by the lighting company at the time of such previous hearings of $9,285,642; and in the absence of fraud, no reason appears why that finding should not stand, except as added to or modified by subsequent changes in conditions. Many detailed reports of experts made from the lighting company's books and records were also introduced. Every witness examined with reference thereto testified to ad-

ditions made to the lighting company's properties since the previous hearings, and we think that, having due regard to the burden of proof placed on the lighting company by the statute quoted, the commission was fully justified in finding that the lighting company's investment had increased, and that it was entitled to earn a return based upon $10,194,259.74 invested. And this, too, if the testimony of the commission's expert, who had entered the military service of the United States before the city had an opportunity to cross-examine him, be wholly disregarded. The commission, in the making and approval of rates, must be guided by the statute. Rem. Code, § 8626-26.

"All charges made, demanded or received by any gas company, electrical company or water company for gas, electricity or water, or for any service rendered or to be rendered in connection therewith, shall be just, fair, reasonable and sufficient."

We said in *State ex rel. Northern Pac. R. Co. v. Public Service Commission*, 95 Wash. 376, 163 Pac. 1143:

"We think the commission as an administrative and regulative body has peculiar powers . . . It is not bound, as is a court, to acquire its information concerning all matters involved in the proceeding before it wholly and entirely from the evidence of witnesses or other evidence produced before it, but may take into consideration the results of its general investigations, general information upon a given subject within its powers, and all matters which affect the matter and concerning which it must determine the facts."

Following this rule, the burden of proof, which is on the lighting company, is met, not alone by the evidence actually introduced at the hearing, which we think in this case was sufficient (and it is immaterial whether that evidence was introduced by it or came from the commission's experts or others who examined into its affairs), but also by the general knowledge on the sub-

ject possessed by the commission, as a result of its previous experience and investigation.

The basis for rate fixing is defined by the statute, Rem. Code, § 8626-92, which presumably was followed in the earlier hearing, and appears to have been followed here, and the commission, after fixing the value of the lighting company's property for rate making purposes, found:

"There is an ever changing relationship between the cost of service and the rates of service. Not every slight change in this relationship calls for a readjustment in the rates. There, however, can be no question in the minds of our fair citizenship but what the abnormal times which now confront us have so disturbed all past relationships that there must be radical readjustments and these, in the great majority of cases, mean an increase in rates, which, upon the surface, would indicate that the many are being taxed for the benefit of the few. In other words, that the primary purpose is to fill the coffers of the corporations. An analysis, however, in practically all cases of increase will show that scarcely anything remains in the treasury of the corporation; that the money merely reaches that place to immediately go out in payment of increased cost of material and labor . . .

"We have in this case allowed the Seattle Lighting Company an increase in rates under which it may be able to earn a sum equal to increased cost of material and labor. We have not intended by this order to make it possible for this utility to return to its stockholders or bondholders one cent additional to what they received prior to war times."

All must realize that a public utility must have sufficient rates or it cannot continue to exist. And the commission's finding that the rates as fixed by it were just, fair, reasonable, and sufficient, must, from the record before us, be upheld.

While some of the rates provided by tariff No. 3 appear to be higher than the corresponding rates in

tariff No. 2, others are lower, and we cannot say that, as a whole, tariff No. 3 raises the rates above those provided in tariff No. 2.  There is apparently an adjustment as to different classes of consumers, and it may well be that tariff No. 3 will, in actual operation, produce no more revenue than tariff No. 2.  Again, the language of the statute requiring the rates to be "just, fair, reasonable, and sufficient," covers and authorizes an adjustment between different classes of consumers, in order that the rates may be just and fair to each class.  And we are not now prepared to say that the statute does not authorize an increase of rates by the commission over those asked for, if it is satisfied by the evidence that such increase is necessary to enable a public utility company to continue to serve the public.

A reading of the order convinces us that it is not intended to and does not authorize the lighting company to bill back or collect from consumers any possible excess which may have accrued by reason of tariff No. 3 being substituted for tariff No. 2, as of the date the latter was made effective.  On the contrary, the order does provide that, where the lighting company has collected an excess under tariff No. 2, such excess so collected shall be credited or paid to the consumer.

The judgment appealed from is affirmed.

CHADWICK, C. J., MITCHELL, MACKINTOSH, and MAIN, JJ., concur.