[No. 22278.  Department Two.  March 27, 1930.]

NORTH PACIFIC COAST FREIGHT BUREAU *et al., Respondents,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Appellants.*[1]

*The Attorney General* and *John C. Hurspool, Assistant,* for appellant Department of Public Works.

*Cleland & Clifford,* for appellant Associated Log Shippers of Washington.

*L. B. da Ponte, T. H. Maguire, F. M. Dudley, A. J. Clynch,* and *W. A. Robbins,* for respondents Northern Pacific Railway Co. *et al.*

MAIN, J.—This is an appeal from a judgment of the superior court reversing an order of the department of public works.

[1] Reported in 286 Pac. 86.

September 29, 1925, the North Pacific Coast Freight Bureau, by S. J. Henry, agent, on behalf of the Chicago, Milwaukee and St. Paul Railway Company, Great Northern Railway Company, Northern Pacific Railway Company and Oregon-Washington Railroad and Navigation Company, issued and filed with the department of public works local freight tariff No. 51, naming commodity and distance rates on saw logs between stations on the lines of the roads mentioned. This tariff contained no rules or regulations for the scaling of logs.

July 27, 1927, the North Pacific Coast Freight Bureau, by S. J. Henry, agent, issued, on behalf of the railroads mentioned and two others, local freight tariff No. 54, naming "Rules for measurements of soft wood saw logs" applicable between stations on the lines of the roads named in the schedule. This purported tariff contained no rates of any kind, but consisted of rules and regulations relating to the scaling of logs for the determination of the number of thousand feet contained therein. At the left of the word "rules" as above quoted, appears the letter "(R)," on the title page, and at the lower left hand corner there appears: "(R) Reduction." After the filing of tariff 54, the Associated Log Shippers of Washington filed a protest with the department, alleging that the rules and regulations therein contained would substantially increase the freight charges on logs. Notice of the filing of this protest was given to the various railroads, and the Northern Pacific Railway Company filed an answer to the protest, denying that freight charges would be increased thereby. None of the other roads filed answers.

In due time the matter came on for hearing, and the Great Northern Railway Company, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company and

the Oregon-Washington Railroad and Navigation Company appeared by counsel, as did also the Northern Pacific Railway Company. At this hearing, the Northern Pacific Railway Company introduced evidence tending to show that the rules and regulations contained in tariff 54 had been in effect on that road for many years, and that they did not increase the freight charges on logs shipped over that line. Evidence was then offered by the Northern Pacific to show that the charges as they would be affected under tariff 54 were fair, just and reasonable.

This testimony was received over objection, and during its introduction and before it had been concluded, the department inquired of counsel of the respective railroads then present whether the rules and regulations embodied in tariff 54 would increase freight charges. In response to this, counsel for the Great Northern and Chicago, Milwaukee and St. Paul companies stated that the rules and regulations would increase the revenue from the shipment of logs. Counsel for the Oregon-Washington Railway and Navigation Company neither affirmed nor denied that the rules and regulations would increase the freight charges for the shipment of logs upon that road. As stated, the Northern Pacific had already introduced evidence showing that for many years it had scaled logs according to the rules and regulations embodied in tariff 54.

At this point, the Associated Log Shippers of Washington moved that the proceedings be dismissed and that tariff 54 be canceled. The railroads joined in the motion to dismiss, but resisted that part of the motion for the cancellation of tariff 54. At this time, tariff 54 had not gone into effect. Its going into effect had first been suspended by the department, and later by the railroads at the request of the department, until February 28, 1929.

The hearing above mentioned, at which it was stated that the rules and regulations contained in tariff 54 would increase the freight charges on logs upon two of the lines was on January 1, 1929. After the motion to dismiss the proceeding and cancel tariff 54 was made, the department announced that it would be sustained, and no further testimony was taken.

January 21, 1929, the department made the following findings of fact:

"By schedule filed by their publishing agent, the North Pacific Coast Freight Bureau, S. J. Henry, agent, effective September 1, 1927, the Chicago, Milwaukee and St. Paul Railway Company (H. E. Byram, Mark W. Potter and Edward J. Brundage, receivers) Great Northern Railway Company, Northern Pacific Railway Company, Oregon-Washington Railroad & Navigation Company and Spokane, Portland & Seattle Railway Company proposed rules for measurement of soft wood saw logs applicable between stations in western Washington in connection with the transportation thereof, as described on page 2 of N. P. C. F. B. local freight tariff No. 54, W. D. P. W. No. 207, presented as an exhibit in this cause.

"Upon the protest of the Associated Log Shippers of Washington, a voluntary organization composed of the principal shippers of logs in the state of Washington over the lines of railroads of respondents, the operation of the schedule was suspended until November 29, 1927, and thereafter the operation was voluntarily suspended by respondents until February 28, 1929.

"The applicable statute of this state provides that when any change is made in any rate, fare, charge, classification, rule or regulation, the effect of which is to cause an increase, attention shall be directed to such increase by some character on the copy of the schedule filed with the department, immediately preceding or following the item in such schedule, such character to be designated by the department (L. '11, p. 550, sec. 15, Rem. 10351).

"The department's tariff circular No. 1—'Rules and

Regulations governing the construction and filing of tariffs by common carriers, etc.,' general order 5435, effective December 1, 1922, at page 5, rule 2, provides:

" 'Rule 2. Tariff publications and supplements thereto (except temporary round trip excursion fares) must indicate increases and reductions made in existing rates, fares, rules or regulations by the use of the following uniform symbols:

" '(A) to indicate increases: (R) to indicate reductions.'

"The title page of the copy of the schedule, tariff No. 54, *supra,* filed by respondents with the department, carries the symbol (R) immediately preceding the title words 'Rules for measurement of soft wood logs.' At the bottom of the title page in the left hand corner appears the reference to symbol (R) *supra,* '(R) Reduction.'

"It is therefore obvious that in constructing the schedule respondents intended to give notice to the department and to the general public that, by employment of the rules and regulations contained therein, a reduction in the transportation charges of saw logs would be given effect.

"At the hearing, counsel for two of respondents, viz, the Great Northern Railway Company and the Chicago, Milwaukee, St. Paul & Pacific Railroad, the latter being the successor to the Chicago, Milwaukee & St. Paul Railway (H. E. Byram, Mark W. Potter and Edward J. Brundage, receivers) admitted that in fact the effect of the application of the schedule would be to increase the transportation charges on saw logs transported over their lines of railroad in the state of Washington.

"The department finds that the schedule under suspension is unlawful under the statute (Rem. 10351 *supra*) and an order will be entered requiring the cancellation of the suspended schedule and discontinuing the proceeding."

On the same day an order was entered directing the cancellation of tariff No. 54. Thereupon, the matter was taken before the superior court for review, and

resulted in the judgment reversing the order of the department and directing it to determine the issues arising from the filing of tariff No. 54 and the protest thereto. From this judgment the department of public works and the Associated Log Shippers of Washington appeal. The railroad companies appeal from that part of the judgment which remanded the cause to the department of public works to determine the issues arising from the filing of tariff No. 54. From the findings of the department of public works, it is apparent that the proceeding was dismissed because the symbol "(R)," which indicated reduction, was placed on the title page of tariff No. 54, and the fact was that, as to two of the roads, the charges would not be reduced, but would be increased, and as to one, it would remain the same as it had been charging before.

The first question is whether tariff No. 54 has gone into effect. As above stated, it was suspended until February 28, 1929. Prior to that time, the department had entered its findings and order dismissing the proceeding and canceling the tariff, and the entire matter was taken before the superior court for review. While the matter was pending in the superior court, the findings and order of the department were not superseded. After the judgment of the superior court was entered, an appeal was taken to this court and the findings and order of the department were not superseded or set aside by the judgment of the superior court.

Section 10424, Rem. Comp. Stat., in part provides that:

"If the commission [department of public works] shall at the conclusion of the hearing refuse to permit such increase, either in whole or in part, no supersedeas shall be granted in any action or proceeding brought to review the order of the commission pending the final

determination of such action by the superior court, or, if appealed to the supreme court, by such supreme court.''

That statute is applicable to the present situation. The department of public works refused to permit the increase which would be produced under the rules and regulations in tariff 54, by dismissing the proceeding, and canceling or ordering that the tariff be canceled.

The case of *State ex rel. Seattle v. Public Service Commission*, 76 Wash. 492, 136 Pac. 850, is not controlling. In that case, there was no question as here, of placing upon a tariff a symbol which would indicate a reduction in freight charges, when in fact the tariff under its rules and regulations would operate to increase such charges.

The next question is whether the department of public works, when it appeared upon the hearing that tariff No. 54 would increase freight charges on logs rather than decrease, was justified in dismissing the proceeding and canceling or ordering canceled the tariff.

In section 10351, Rem. Comp. Stat., it is provided:

''When any change is made in any rate, fare, charge, classification, rule or regulation, the effect of which is to increase any rate, fare or charge then existing, attention shall be directed to such increase by some character on the copy filed with the commission immediately preceding or following the item in such schedule, such character to be designated by the commission.''

By this statute, the department of public works was authorized to designate the character or symbol to be placed upon a tariff which would indicate an increase in rates or charges if such were the fact. In pursuance of the authority given by this statute, the department promulgated a rule by which the letter ''(A)''

was to be the symbol which would indicate an increase in the rates, fares or charges, and the letter "(R)" would indicate reductions. Tariff No. 54, as already stated, had the letter "(R)" at the left of the word "rules" on the title page, and at the lower left hand corner thereof, "(R) Reduction." The symbol "(R) Reduction" on the tariff would indicate to any one consulting the same that the rules therein provided for would result in a reduction of freight rates or charges, and not an increase.

It may be said that the Associated Log Shippers of Washington were not misled by the use of the incorrect and misleading symbol, but that association does not represent all the shippers of logs in this state. It was important to the general public and to the shippers of logs to have the correct symbol placed upon the tariff. It may be that shippers of logs other than those represented by the Associated Log Shippers of Washington examined the title page of the tariff, saw the symbol thereon indicating a reduction, and concluded that they would take no further interest therein.

The use of the symbol was more than a negligible irregularity, and was a matter of material consequence. It was important that the tariff filed should speak the truth. When it appeared to the department that the misleading symbol "(R)" had been placed upon the title page of tariff No. 54, it was not only within the power of the department, but it was its duty as well, to dismiss the proceeding and cancel or order canceled the tariff. In no other way could the rights of the shippers of logs not represented at the hearing be protected.

Cases which hold that a tariff which has taken effect and become operative is not rendered void or illegal by failure to place the proper symbol thereon or post the required notice are not applicable to the present

situation, because here, as we have seen, tariff No. 54 has at no time taken effect or become operative.

Whether the misleading symbol had been placed in issue before the department by the Associated Log Shippers of Washington is entirely immaterial. When the fact appeared, the department had the right to act. It is said the department waived this irregularity, but we find nothing to justify this contention. The department acted promptly when the fact appeared.

■ Something is said to the effect that, since the rules of the department were not introduced in evidence, they cannot be considered. Under the statute, the department had the right to make a rule prescribing the symbols which would indicate an increase and a decrease. The rule was so made by the department. It was not necessary to introduce this rule in evidence, in order that the court could take notice thereof. In its findings, the department embodied the rule, and that was sufficient.

The briefs in this case take a somewhat wider range than this opinion would seem to indicate, but, as we view the matter, we have considered all the questions which are necessary to the determination of the present controversy. The ruling of the department does not prevent the railway companies from filing a new tariff with the correct symbol thereon, if they should care to do so.

The judgment will be reversed, and the cause remanded to the superior court, with directions to enter a judgment affirming the order of the department.

MITCHELL, C. J., FULLERTON, FRENCH, and HOLCOMB, JJ., concur.